IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 109,783

IN THE MATTER OF THE EQUALIZATION APPEAL OF WAGNER, KRISTIN LEA
for the Year 2012 in Johnson County, Kansas.

SYLLABUS BY THE COURT

1.

Decisions of the Court of Tax Appeals are subject to review under the Kansas Judicial Review Act, K.S.A. 77-601 *et seq.*

2.

When different tax years are involved in matters of taxation, principles of res judicata and collateral estoppel do not apply because taxes are levied annually.

3.

K.S.A. 2012 Supp. 79-1460(a)(2) stated that when the valuation for real property has been reduced due to a final determination made pursuant to the valuation appeals process, the valuation of the property for the next taxable year will not be increased unless the county appraiser provides documented substantial and compelling reasons for increasing the valuation.

Review of the judgment of the Court of Appeals in an unpublished opinion filed March 14, 2014. Appeal from the Court of Tax Appeals. Opinion filed June 10, 2016. Judgment of the Court of Appeals affirming the Court of Tax Appeals is reversed. Judgment of the Court of Tax Appeals is reversed.

1

*Kristin Wagner*, appellant, was on the briefs pro se.

*Kathryn D. Myers*, assistant county counselor, was on the brief for the Board of County Commissioners of Johnson County, appellee.

The opinion of the court was delivered by

ROSEN, J.: Kristin Lea Wagner, a Johnson County resident, appeals the Court of Appeals' decision in *In re Equalization Appeal of Wagner*, No. 109,783, 2014 WL 1096896 (Kan. App. 2014) (unpublished opinion) (*Wagner II*), affirming the Court of Tax Appeals' $494,200 valuation of her home for the 2012 tax year. Notably, in determining the 2012 valuation, COTA adopted the final valuation it assigned to the home for the 2011 tax year.

We conclude that COTA ignored evidence in the record establishing that Wagner's home suffered a 2.94% decrease in value between 2011 and 2012. Accordingly, we reverse the Court of Appeals' decision and remand the case to COTA with directions that Wagner's home be valued at $479,600 for the 2012 tax year.

FACTS

To fully understand Wagner's current tax appeal, an overview of the facts from her 2011 appeal—*In re Equalization Appeal of Wagner*, No. 107,472, 2012 WL 3290147 (Kan. App. 2012) (unpublished opinion) (*Wagner I*)—is necessary.

In 2011, Wagner received a Notice of Value from the County showing that, based on comparable properties and a quality rating of 4.33 good+, the appraised value of her property was $569,000. Wagner appealed, complaining that the appraised value was higher than that of 2006 despite no improvements to the property and a "substantial

2

downturn" in the real estate market during the interim. After an informal equalization appeal, the County did not change the appraised value, leading Wagner to file a protest form with COTA. Ultimately, COTA determined that the appraised value for tax year 2011 should be reduced to $553,600. Wagner disagreed with COTA's determination and appealed. *Wagner I*, 2012 WL 3290147, at *1-3.

On appeal before the Court of Appeals, Wagner raised two arguments:  (1) COTA improperly assumed that the 4.33 good+ quality rating was correct and placed the burden of proving its invalidity on Wagner; and (2) COTA's underlying factual findings concerning the aptness of the quality rating were not based on evidence that was substantial when viewed in the light of the record as a whole. The *Wagner I* court agreed with Wagner's arguments, concluding that COTA had improperly shifted the burden of proof on the quality rating issue and that COTA's underlying factual findings concerning the quality rating were not based on evidence that was substantial when viewed in the light of the record as a whole. Accordingly, the court reversed COTA's decision and remanded with directions that COTA establish the appraised value of Wagner's property for 2011 based on a 4.00 good quality rating. *Wagner I*, 2012 WL 3290147, at *7. The *Wagner I* decision became final in September 2012.

While the 2011 appeal was pending, the County, utilizing a sales-comparison approach and, once more, a construction quality rating of 4.33 good+, appraised Wagner's property for the 2012 tax year at $537,300—a 2.94% decrease from the value assessed in 2011 ($553,600) prior to Wagner's successful appeal to the Court of Appeals. Wagner challenged the 2012 appraisal, arguing before the Small Claims and Expedited Hearings Division of COTA that the property's fair market value had fallen to $490,000. The hearing officer found in favor of the County, and Wagner appealed.

3

COTA conducted a hearing on October 11, 2012—after the *Wagner I* opinion had become final. At the hearing, Traci Weaver, a Johnson County appraiser, appeared for the County and Wagner appeared pro se. In describing Wagner's home, Weaver stated that the property is a "conventional style home" located in the Belle Meade Farms subdivision of Shawnee, Kansas. The home has five bedrooms, five full and one-half baths, and a walk-out basement. Weaver stated that the home had a "[t]otal living area above grade" of 3,551 square feet along with a "lower level finish of approximately 2,000 square feet." In discussing an aerial view of the property, Weaver stated that Wagner's "home has a lot of pitch—pitches in the roof, some angles and design features that are a little bit better than what would be normal or typical for this area . . . ." Weaver also noted that the "home has certain amenities that a typical home in this area would have, such as decks and patios, and . . . a pool."

Weaver acknowledged that the 4.33 good+ quality rating utilized in the appraisal was at issue. But, Weaver stated that in preparation for the hearing,

> "the County did go out and view the subject property and the comparables as well as other homes within the neighborhood to determine if . . . the quality rating for the property is accurate; and at this time we do deem that, based on the information that we have and views of the property, that quality is stated accurately."

Weaver testified that the County relied heavily on the sales comparison approach in determining the appraised value for Wagner's property. She discussed the three comparable properties utilized in the 2012 appraisal, two of which were located in the same subdivision. Weaver stated:

> "All these homes are similar conventional style homes either built in the late 1990s or early 2000s. County has made adjustments for those market driving factors such as differences in total living area, lower level finish and condition of these homes.

4

"These properties sold with prices ranging from $420,000, which is Comp 2 [located outside the subdivision]; Comp 1 selling for $625,000, and Comp 3 selling for $737,000. After these adjustments have been made, we have an indicated market value of $545,000. However, the County chose to go with the model predictor [*i.e.*, Multiple Regression Analysis (MRA) Estimate of Value] of $537,300 for this valuation."

Notably, out of the four approaches the County used to appraise the value of Wagner's home, the MRA estimate of value resulted in the lowest value. Within the appraisal report the County submitted to COTA, "MRA Value" was defined as

"a statistical valuation approach. It is an estimate of value based on regression models developed for delineated market areas, usually a neighborhood or group of neighborhood[s] referred to as a model area. Multiple regression analysis allows for defining the relationship between property characteristics and sale prices. Property characteristics contributing to value are identified and the summed contributory value of each, as defined in the model, become the value from this approach."

See also *In re Equalization Appeal of Voth*, No. 94-8411-EQ, 1995 WL 865905, at *1 (Kan. Bd. Tax App. 1995) ("MRA stands for Multiple Regression Analysis, which is a statistical technique for estimating unknown data on the basis of known and available data. In mass appraisal, the unknown data is the fair market value and the known data consists of sales prices and property characteristics of comparable properties. The objective of the MRA is to model the relationship between property characteristics and value so that an estimate of fair market value can be estimated from the comparable sales. The actual calculation of the MRA is extremely difficult. . . . Because of the complex mathematics involved, a computer is used to make the calculations.").

Based on the information the County had regarding Wagner's home, Weaver recommended that the 2012 appraised value of the home remain at $537,300.

After Wagner questioned Weaver about the properties she used as comparables, Wagner directed COTA's attention to Taxpayer Exhibit No. 3, which was a copy of the Court of Appeals' *Wagner I* decision. In referring to the *Wagner I* decision, Wagner stated the following:

> "So in that case, I'd like to reference Taxpayer Exhibit No. 3. I know that I heard Ms. Weaver at the beginning state that she would only like to talk about 2012. However, this document from 2011, I believe is very important to the value of 2012.
>
> "It was my understanding that a copy of this was provided to the County as well as [COTA] but in it my understanding was that it was directed that the quality value of my home in 2011 be returned to a value of 4 instead of a value of 4.3. . . .
>
> "*So again, I'm asking that 2011 be recalculated with a value of 4. Since nothing has changed since 2011, I believe it's imperative that my value for 2012 also be calculated with a quality of 4.*" (Emphasis added.)

The COTA judge responded that he was unsure whether the *Wagner I* case had become final but told Wagner she was free to argue that "the 2011 should roll over to 2012." Counsel for COTA noted that because the Court of Appeals reversed COTA's decision in *Wagner I*, there was more action that needed to be taken to determine the final 2011 appraisal value for Wagner's home. Based on this comment, Wagner suggested that the hearing be continued until the 2011 tax appeal was finally resolved because she believed that "the 2011 amount is going to have some impact on 2012." In response, one of the COTA judges sitting on the panel stated, "Well, let's go ahead and finish the testimony, and then that's a decision that the Court will have to make." Wagner concluded by stating:

> "I have simply one document that I sent during the exchange of evidence, and that would be Taxpayer [Exhibit] No. 4. I believe it's pretty straightforward, but essentially, assuming that the quality value on my home for 2011 is good as opposed to good plus, I would like to see 2011 recalculated and then based upon that value consider 2012."

6

Taxpayer Exhibit No. 4 was a letter that Wagner wrote to the Johnson County Appraiser prior to the hearing before COTA, detailing her legal arguments regarding the 2012 appraisal of her home. Wagner wrote:

"For 2012, Johnson County established the appraised value of my property at an amount 2.94% lower than the 2011 appraised value.

"In determining the 2011 value, Johnson County used a Construction Quality parameter setting of Good+ (4.33). I appealed the county's use of the Good+ (4.33) setting; the COTA denied my appeal and affirmed the county's value.

"In its opinion filed August 10, 2012 (case number 107,472), the Kansas Court of Appeals reversed the COTA's decision regarding the appraised value of my property for 2011 and directed the COTA to establish the 2011 appraised value based on a Quality parameter setting of Good (4.00), rather than Good+ (4.33).

"Johnson County has not yet provided me with the corrected appraised value for 2011. Assuming that the corrected value for 2011 is fair and acceptable, *I request that the 2012 appraised value of my property be set at a value 2.94% lower than the corrected 2011 appraised value. I also request that the Construction Quality of my property for 2012 be set at Good (4.00)."* (Emphasis added.)

After asking for and receiving no final comments, one of the COTA judges sitting on the panel stated that the hearing was now closed and that the panel would take the information the parties had provided under advisement and issue a decision within the statutory time period.

With regard to the 2011 tax appeal, upon remand, COTA reviewed supplemental valuation evidence provided by the County applying a 4.00 good quality rating to Wagner's home. Based on this evidence showing a market value for Wagner's home of $494,200, COTA issued a final decision on December 13, 2012, adopting this value as the appraised value for Wagner's home for the 2011 tax year.

On January 4, 2013, COTA sent a letter to Weaver, the Johnson County appraiser, regarding the 2012 appraisal of Wagner's home. The letter stated:

"The Court held a hearing in this matter on October 11, 2012. The Court requests a tax year 2012 sales approach be compiled via the county's mass appraisal system utilizing the physical characteristics and amenities as originally indicated *with the exception that the construction quality factor be changed to good*.

"Please submit this additional evidence to the Court within two (2) weeks of the date of this letter. Please also send a copy of your submission to the applicant, Ms. Wagner, and include a notation in your submission to the Court indicating that you have done so.

"The Court will also allow the applicant ten (10) days to present any reply that she may have to the county's submission." (Emphasis added.)

Kathryn D. Myers, a Johnson County assistant county counselor, responded to the letter on January 9, 2013. Myers stated:

"The County is in receipt of a letter dated January 4, 2012[,] asking Ms. Weaver of the appraiser's office to provide additional information related to an evidentiary hearing that was held and the record closed on October 11, 2012. The Court does not cite to any legal authority that allows it to request additional information from a party litigant once the evidentiary record is closed. As the County is not compelled by an order, it declines to provide additional information."

With regard to the 2012 valuation of Wagner's home, Myers stated that it was the County's position that "K.S.A. 79-1460 applies to the 2012 tax year and that the Court is mandated to maintain the final value determined by the 2011 appeal to the 2012 tax year." K.S.A. 2012 Supp. 79-1460 stated in pertinent part:

"(a) The county appraiser shall notify each taxpayer in the county annually on or before March 1 for real property and May 1 for personal property, by mail directed to the taxpayer's last known address, of the classification and appraised valuation of the taxpayer's property, *except that, the valuation for all real property shall not be increased unless . . . (2) for the taxable year next following the taxable year that the valuation for real property has been reduced due to a final determination made pursuant to the valuation appeals process, documented substantial and compelling reasons exist therefor and are provided by the county appraiser.* When the valuation for real property has been reduced due to a final determination made pursuant to the valuation appeals process for the prior year, and the county appraiser has already certified the appraisal rolls for the current year to the county clerk pursuant to K.S.A. 79-1466, and amendments thereto, *the county appraiser may amend the appraisal rolls and certify the changes to the county clerk to implement the provisions of this subsection and reduce the valuation of the real property to the prior year's final determination*, except that such changes shall not be made after October 31 of the current year." (Emphasis added.)

On January 19, 2013, Wagner sent a letter to COTA noting the County's refusal to provide the information COTA had requested and stating her belief that the *Wagner I* decision dictated that the County apply a 4.00 good quality rating instead of a 4.33 good+ rating to the 2012 appraisal of her home. Wagner's evidence presented at the hearing showed that in 2012, the County, using a quality rating of 4.33 good+, appraised her home at $537,300—a 2.94% decrease from the value assessed in 2011 ($553,600) using the same 4.33 good+ quality rating. Based on this evidence, Wagner argued that the 2012 value of her home should be $479,600—2.94% lower than the corrected value assessed for 2011 ($494,200). Wagner argued that contrary to the County's assertion, K.S.A. 2012 Supp. 79-1460 did not mandate that the final 2011 valuation be maintained as the valuation for 2012 because she was seeking a valuation for 2012 that was less than the 2011 valuation. Wagner noted that there was no language within the statute that prevented a valuation that was lower than the previous year's valuation.

9

COTA did not respond to Wagner's letter and did not order the County to provide the additional information that COTA had requested. Instead, COTA issued an order on March 8, 2013, establishing the value of Wagner's property for the 2012 tax year at $494,200, *i.e.*, the same amount as the property's 2011 final appraised value. In reaching its decision, COTA stated:

"In light of the findings of the Kansas Court of Appeals in *Wagner* [*I*], we find that a construction quality rating of good is appropriate for the valuation of the subject property for the 2012 tax year. The Court finds the subject property's final 2011 appraised value of $494,200 was determined based on this corrected construction quality rating and pursuant to this Court's examination of pertinent market data. The Court finds no substantial credible evidence to support the Taxpayer's assertion that the *subject neighborhood* has experienced a 2.94% decrease in overall market value from 2011 to 2012. Given the record evidence, the Court concludes that the subject property's final 2011 appraised value of $494,200 is the best indicator of the subject property's value for the 2012 tax year." (Emphasis added.)

Notably, in maintaining the 2011 value for the 2012 tax year, COTA did not rely on K.S.A. 2012 Supp. 79-1460 but concluded that the final appraisal for the 2011 tax year constituted the best evidence of the home's value for 2012.

Wagner filed a subsequent letter asking for reconsideration, pointing out that her argument for a 2.94% reduction in value was not based on a supposed decrease in value of homes in her neighborhood, but on the decrease in value the County assigned to her home in 2011 and 2012 using a 4.33 good+ quality rating. Wagner specifically asked COTA to require that the County produce a 2012 appraisal using a 4.00 good quality rating. In the alternative, Wagner asked COTA to set the 2012 value of her home at $479,600—again, a decrease of 2.94% from the final 2011 value assigned to her home. When COTA denied Wagner's petition for reconsideration, Wagner filed a timely petition for judicial review.

10

Before the Court of Appeals, Wagner raised two arguments. First, she argued that COTA misconstrued the basis for her argument that her home's 2012 value should be reduced by 2.94%. Wagner argued that COTA mistakenly believed that her argument for a reduction was based on a supposed decrease in value of her home's neighborhood rather than a specific decrease in value to the home itself. Because of this mistaken belief, Wagner contended that COTA ignored evidence supporting her argument (*i.e.*, the County's 2011 and 2012 appraisals of her home showing a 2.94% reduction in value). Second, Wagner argued that COTA relieved the County of its statutory burden to prove the value of her home by failing to require that the County produce a 2012 appraisal of her home using a 4.00 good quality rating. Wagner believed that such an appraisal was required under the holding of *Wagner I* and, moreover, factually appropriate, given that she had made no improvements to her home between 2011 and 2012.

In response, the County argued that because the valuation of Wagner's home in 2011 had been reduced as a result of the valuation appeals process, K.S.A. 2012 Supp. 79-1460(a)(2) dictated that the 2011 valuation be carried over to 2012 unless substantial and compelling reasons existed to justify increasing the valuation for 2012. The County pointed out that after the hearing before COTA, it took the position that no substantial and compelling reasons justified increasing the home's valuation for 2012. The County contended that Wagner had the burden to prove that her home's 2012 valuation should be less than the final valuation for 2011 and that she failed to do so. As a result, the County argued that COTA, despite not relying on K.S.A. 2012 Supp. 79-1460 for its decision, properly applied the 2011 valuation to the assessment of Wagner's home for 2012.

The County also responded to Wagner's argument contending that it had a legal obligation to produce a 2012 appraisal of her home using a 4.00 good quality rating. The County noted the absence of a provision within the Kansas Administrative Procedure Act

11

(KAPA), K.S.A. 77-501 *et seq.*, authorizing a hearing officer or a hearing panel to compel a party to create and/or offer evidence that it did not offer voluntarily at an evidentiary hearing that has been closed.

Ultimately, the Court of Appeals affirmed COTA's decision, concluding that COTA properly used the 2011 valuation to determine the home's value for the 2012 tax year. In reaching this holding, the court determined that unless substantial and compelling reasons existed for doing so, K.S.A. 2012 Supp. 79-1460 prevented the County from increasing a taxpayer's property value during the tax year following a successful tax appeal. But the court also noted that the statute did not prevent a valuation from being *lower* than the final valuation obtained for the prior tax year. Accordingly, the court concluded that because the County conceded that substantial and compelling reasons did not exist for increasing the valuation in 2012, the valuation of the home for 2012 was capped at $494,200, *i.e.*, the final value for 2011. *Wagner II*, 2014 WL 1096896, at *5-6.

With regard to whether the valuation for 2012 should be less than the 2011 valuation, the court construed Wagner's argument for a 2.94% reduction as being based on either a decrease in the value of neighboring properties (how COTA construed Wagner's argument) or on the difference in value the County assigned to her home in 2011 and 2012 using a 4.33 good+ quality rating. Citing *In re Equalization Appeal of Whittaker*, No. 109,155, 2013 WL 4566422 (Kan. App. 2013) (unpublished opinion), in support, the court concluded that Wagner could not "rely on the changes in appraised values of neighboring properties to show that she was entitled to a reduction in value of 2.94% for the 2012 tax year." *Wagner II*, 2014 WL 1096896, at *6. The court also rejected Wagner's argument that a reduction in value was justified based on the difference between the 2011 and 2012 appraisals. The court stated:

"The problem with Wagner's argument is that she bases it on the County's use of the 4.33 good+ quality rating. But the *Wagner I* court reversed and remanded with directions that COTA establish the appraised value of Wagner's property for the 2011 tax year based on a 4.00 good quality rating. Upon remand, COTA valued Wagner's property at $494,200 using the 4.00 good quality rating. In Wagner's 2012 tax dispute, COTA again appraised Wagner's property at $494,200 using the 4.00 good quality rating.

"Because COTA used a 4.00 good quality rating to appraise Wagner's property in 2011 and 2012, Wagner has failed to meet her appellate burden to show that she is entitled to a 2.94% reduction in the appraised value of her property. Simply because Wagner's appraised property value decreased by 2.94% under a 4.3 good+ quality rating, used by the County, it does not necessarily follow that Wagner's appraised property value would have decreased by the same amount under the 4.00 good quality rating used by COTA.

"If we understand Wagner's argument correctly, it turns on a false analogy. Wagner's point, we take it, was that because the County used a 4.33 good+ quality rating to establish the 2012 appraised value of her property of $537,300, which was a 2.94% decreased from the County's 2011 appraised [*sic*] of Wagner's property of $553,600, using the same 4.33 good + quality rating, therefore, COTA's 2012 ad valorem valuation of $494,200, using the 4.00 good quality rating, should be further reduced by 2.94%. Wagner's argument is weak because it relies on the difference in valuation that one may obtain between using a 4.00 good quality rating versus a 4.33 good+ quality rating. Because these two quality ratings are dissimilar, Wagner's argument is not supported by substantial competent evidence. Consequently, COTA properly denied Wagner's request to reduce the appraised value of her property by 2.94%." *Wagner II*, 2014 WL 1096896, at *7.

Based on this reasoning, the Court of Appeals affirmed COTA's decision. *Wagner II*, 2014 WL 1096896, at *8. We granted Wagner's petition for review.

13

ANALYSIS

*4.00 Good Quality Rating*

Decisions of COTA are subject to review under the Kansas Judicial Review Act (KJRA), K.S.A. 77-601 *et seq.* K.S.A. 2012 Supp. 74-2426(c). On appeal, Wagner has the burden of proving the invalidity of COTA's actions and decision because she is the party asserting invalidity. See K.S.A. 2012 Supp. 77-621(a)(1).

K.S.A. 2012 Supp. 77-621(c) sets out eight standards under which an appellate court shall grant relief. Wagner correctly notes that her argument that COTA erroneously relieved the County of its burden to prove the value of her home for 2012 using a 4.00 good quality rating falls under subsection (c)(4) of the statute. See K.S.A. 2012 Supp. 77-621(c)(4) (relief shall be granted if "the agency has erroneously interpreted or applied the law").

Wagner asserts that based on the Court of Appeals' decision in *Wagner I* (remanding with orders that a 4.00 good quality rating be used for the 2011 appraisal) and the fact that she made no improvements to her home between 2011 and 2012, the County was legally required to use a 4.00 good quality rating to appraise her home in 2012. Because the County had the burden of proof before COTA, see K.S.A. 2012 Supp. 79-1609, Wagner contends that COTA relieved the County of its burden when it failed to order that the County produce a 2012 appraisal of her property using a 4.00 good quality rating.

Though Wagner is correct that the County bore the burden of proof at the hearing before COTA to establish the validity of its appraisal of her home for 2012, she is mistaken that the County had the duty to present an appraisal of her home using a 4.00 good quality rating. Wagner assumes that the Court of Appeals' decision in *Wagner I*

14

regarding her home's 2011 appraisal dictates that a 4.00 good quality rating must be applied to any subsequent appraisals of her home until she "changes the construction quality of her property, and the [County] properly substantiates and documents a different CQ/G rating for her property." The problem with this argument is that *Wagner I* only involved the appraisal of Wagner's home for the 2011 tax year and merely concluded that the County, *for that tax year*, had failed to sufficiently prove that a 4.33 good+ quality rating was properly applied to the appraisal of the home. Based on this holding, the *Wagner I* court reversed and remanded with directions that "COTA establish the appraised value of the subject property for tax year 2011 based on a 4.00 quality rating." (Emphasis added.) *Wagner I*, 2012 WL 3290147, at *7. As long as the county meets its burden, *Wagner I* did not foreclose the possibility of a 4.33 good+ quality rating being applied to future appraisals of Wagner's home. Further, when different tax years are involved in matters of taxation, principles of res judicata and collateral estoppel do not apply because taxes are levied annually. *In re Tax Appeal of Fleet*, 293 Kan. 768, 780-81, 272 P.3d 583 (2012); *In re Equalization Appeal of Prieb Properties*, 47 Kan. App. 2d 122, 127, 275 P.3d 56 (2012). Accordingly, we reject Wagner's assertion that the County was precluded from producing an appraisal of her property using a 4.33 good+ quality rating, if the county can meet that burden.

*Reduction in Value*

Next, Wagner argues that COTA improperly rejected her argument that her home's 2012 valuation should be 2.94% less than the value assigned to it for 2011 tax year. Wagner relies on K.S.A. 2012 Supp. 77-621(c)(7) and (c)(8) to support her claim for relief.

K.S.A. 2012 Supp. 77-621(c)(8) requires an appellate court to grant relief if COTA's action is otherwise unreasonable, arbitrary, or capricious. K.S.A. 2012 Supp. 77-

15

621(c)(7) allows an appellate court to grant relief if the agency action is based on a determination of fact, made or implied by the agency, that is not supported by evidence that is substantial when viewed in the light of the record as a whole. K.S.A. 2012 Supp. 77-621(d) defines "in light of the record as a whole" to include the evidence both supporting and detracting from an agency's finding. Courts must now determine whether the evidence supporting the agency's factual findings is substantial when considered in light of all the evidence. K.S.A. 2012 Supp. 77-621(d); *Redd v. Kansas Truck Center*, 291 Kan. 176, 182-83, 239 P.3d 66 (2010). "Substantial competent evidence possesses both relevance and substance and provides a substantial basis of fact from which the issues can be reasonably determined." *Frick Farm Properties v. Kansas Dept. of Agriculture*, 289 Kan. 690, 709, 216 P.3d 170 (2009). Furthermore, in reviewing the evidence in light of the record as a whole, an appellate court "shall not reweigh the evidence or engage in de novo review." K.S.A. 2012 Supp. 77-621(d).

Ultimately, COTA decided that "[i]n light of the findings of the Kansas Court of Appeals in *Wagner* [*I*]," a 4.00 good construction quality rating should be used to appraise Wagner's home for 2012. COTA then concluded that because the final 2011 appraisal of Wagner's home employed a 4.00 good quality rating, the resulting valuation of $494,200 should be adopted as the home's value for the 2012 tax year. Moreover, COTA rejected Wagner's argument that the 2012 value should be less than the 2011 value because, according to COTA, there was no substantial credible evidence to support Wagner's assertion "that the *subject neighborhood* had experienced a 2.94% decrease in overall market value from 2011 to 2012." (Emphasis added.)

Initially, it must be noted that COTA's reasoning for adopting the home's 2011 value as its value for 2012 is incorrect. As can be gleaned from its order, COTA misconstrued *Wagner I* as commanding that a 4.00 good quality rating be maintained for 2012. But as indicated above, *Wagner I* only involved the 2011 appraisal and merely

16

concluded that the County, for that tax year, had failed to sufficiently prove that a 4.33 good+ quality rating was appropriate for Wagner's home. As mentioned above, *Wagner I* certainly did not foreclose the possibility of the County proving a 4.33 good+ quality rating applies to future appraisals of Wagner's home.

Instead of relying on *Wagner I* as justification for maintaining a 4.00 good quality rating for 2012 and, in turn, carrying the 2011 valuation over to 2012, COTA should have taken note of the County's post-hearing letter advising it of the applicability of K.S.A. 2012 Supp. 79-1460 to the current appeal. Again, the statute (its constitutionality is not at issue in this appeal) stated that when "the valuation for real property has been reduced due to a final determination made pursuant to the valuation appeals process," the valuation of the property for the next taxable year will not be increased unless the county appraiser provides "documented substantial and compelling reasons" for increasing the valuation. See K.S.A. 2012 Supp. 79-1460(a)(2); *In re Appeal of Tallgrass Prairie Holdings*, 50 Kan. App. 2d 635, 645-46, 333 P.3d 899 (2014) (reaching same conclusion). The Court of Appeals correctly noted that nothing in the language of K.S.A. 2012 Supp. 79-1460 prevented a valuation from being lower than the prior year's valuation. Thus, because the County, in its post-hearing letter to COTA, essentially conceded that substantial and compelling reasons did not exist for increasing the valuation in 2012, the valuation for 2012 was capped at $494,200, *i.e.*, the final value for 2011. *Wagner II*, 2014 WL 1096896, at *5-7.

The Court of Appeals went astray by excusing COTA's misunderstanding of Wagner's argument for a 2012 valuation that was 2.94% less than the final valuation determined for 2011. In its order, COTA misconstrued Wagner's argument as being based on an alleged 2.94% decrease in overall market value of her home's *neighborhood*. Based on this misunderstanding, COTA improperly rejected Wagner's argument for a reduction in value, finding no substantial credible evidence to support her claim. But as indicated

17

above, the record clearly shows that the basis for Wagner's argument was the fact that the County's 2012 appraisal of her home, using a quality rating of 4.33 good+, valued her home at $537,300—a 2.94% decrease from the 2011 valuation of $553,600, resulting from an appraisal using the same 4.33 good+ quality rating.

Though the Court of Appeals acknowledged that the 2011 and 2012 appraisals indicated that Wagner's home suffered a decrease in value, the Court of Appeals reasoned that because these appraisals utilized a 4.33 good+ quality rating, they were not probative as to whether COTA's 2012 valuation of $494,200—based on a 2011 valuation employing a 4.00 good quality rating—should be reduced by 2.94%. The Court of Appeals reasoned that "[s]imply because Wagner's appraised property value decreased by 2.94% under a 4.33 good+ quality rating, used by the County, it does not necessarily follow that Wagner's appraised property value would have decreased by the same amount under the 4.00 good quality rating used by COTA." *Wagner II*, 2014 WL 1096896, at *7. Concluding that Wagner's argument was "weak because it relies on the difference in valuation that one may obtain between using a 4.00 good quality rating versus a 4.33 good+ quality rating," the Court of Appeals held that COTA properly denied Wagner's request for a 2012 valuation that was 2.94% less than the final 2011 valuation. *Wagner II*, 2014 WL 1096896, at *7.

The Court of Appeals' reasoning for rejecting Wagner's argument for a reduction in value appears to be based on false premise. The court assumed that COTA's 2012 valuation of Wagner's home resulted from a 2012 appraisal utilizing a 4.00 good quality rating. *Wagner II*, 2014 WL 1096896, at *7 ("In Wagner's 2012 tax dispute, COTA again appraised Wagner's property at $494,200 using the 4.00 good quality rating."). But the record shows that COTA's 2012 valuation resulted from COTA merely adopting the 2011 valuation for 2012. Granted, the 2011 valuation resulted from an appraisal utilizing a 4.00 good quality rating, but this valuation applied to the 2011 tax year. It was never updated

18

for the 2012 tax year to reflect market changes, nor was there a new appraisal conducted for the 2012 tax year which applied a 4.00 good quality rating. Consequently, the Court of Appeals' reasoning for rejecting the 2011 and 2012 appraisals as evidence of a reduction in value was incorrect.

Because the County has conceded that substantial and compelling reasons do not exist for increasing the valuation of Wagner's home for 2012 above its final 2011 value, K.S.A. 2012 Supp. 79-1460 dictates that the home's valuation for the 2012 tax year must be capped at $494,200. As evidenced by the 2011 and 2012 appraisals—uncontested evidence which the County produced—Wagner's home suffered a 2.94% decrease in value between 2011 and 2012. We agree with Wagner that her home's 2012 valuation should reflect this reduction. Accordingly, we reverse the Court of Appeals' decision and remand the case to COTA with instructions that Wagner's home be valued at $479,600 for the 2012 tax year.

Reversed and remanded for further proceedings consistent with this opinion.

JOHNSON, J., concurs in the result.