NOT DESIGNATED FOR PUBLICATION

No. 117,891

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Equalization Appeal of
PRAIRIE TREE, L.L.C., for the Tax Year 2016 in Johnson County, Kansas.

MEMORANDUM OPINION

Appeal from Board of Tax Appeals. Opinion filed February 8, 2019. Affirmed.

*Linda Terrill* and *Darcy Demetre Hill*, of Property Tax Law Group, LLC, of Overland Park, for appellant Prairie Tree, LLC.

*Kathryn D. Myers*, assistant county counselor, for appellee Board of Johnson County Commissioners.

Before BUSER, P.J., MALONE and STANDRIDGE, JJ.

BUSER, J.:  Prairie Tree, LLC (Prairie Tree) appeals the decision of the Board of Tax Appeals (BOTA) which classified its greenhouse structure as real estate valued at $3,983,970 for the 2016 tax year. On appeal, Prairie Tree contends that BOTA and the Johnson County Board of Commissioners (County) should have classified the greenhouse as personal property instead of real property.

Upon our review, we hold that Prairie Tree has not shown that BOTA erroneously interpreted or applied the law or based its ruling on a determination of fact that is not supported by substantial evidence. Accordingly, we affirm BOTA's classification of the greenhouse as real property for purposes of ad valorem taxation.

1

Prairie Tree operates three nurseries that grow and sell plants. The nurseries operate under the name Suburban Lawn and Garden with locations in Lenexa, Overland Park, and Kansas City, Missouri. Prairie Tree also grows plants on a farm in Gardner, Kansas, and in fields and nurseries in Cass County, Missouri.

Prairie Tree purchased the Lenexa property in 2011 from a company that had operated it as a wholesale and retail nursery business. At the time of purchase, the property had a building from which the previous owners ran their business. Prairie Tree added a building in which it stored soil and constructed some hoop houses, which are structures consisting of plastic covers placed over hoops to protect plants from the elements. At the time of the 2016 tax appraisal, Prairie Tree had almost completed construction of a 45,153 square foot greenhouse at the Lenexa location. This greenhouse is the subject of this equalization appeal.

On April 29, 2016, the County mailed its appraiser's recommendation valuing Prairie Tree's land and buildings at the Lenexa facility at $5,049,870 for the 2016 tax year. On May 16, 2016, Prairie Tree filed an equalization/protest form with BOTA, claiming its land and buildings were improperly classified and assessed. Prairie Tree estimated the property's value at $932,380.

On March 20, 2017, BOTA held an evidentiary hearing on Prairie Tree's appeal. Three witnesses provided testimony on Prairie Tree's behalf. Bill Stueck, the owner and manager of the Lenexa Prairie Tree property, testified that the company believed the County improperly classified the greenhouse as real estate. According to Stueck, Prairie Tree intended the greenhouse to be personal property. Stueck explained:

"[I]t's a growing-production greenhouse. It's like an implement with a tractor that plows the ground. We had to be able to grow inside. And so this greenhouse is a shell that goes over our tables that we grow on and have our plants in. The roof opens up, so that it lets air in. We close it if it's going to rain, but it's not completely waterproof, it does leak, and the building is not completely, you know, air proof. The front—when we need to ventilate it, we—in the front, there's guillotine windows that open up, and the back door is a series of doors that the air can travel through. And there are fans in there as well."

Stueck testified that he purchased the materials for the greenhouse from a Belgium company for $1,148,300 and the cost of freight. He estimated installation costs were about $2 million to $2.5 million. The greenhouse was constructed by Prairie Tree's employees.

Stueck testified that installation of the greenhouse required ordinary site preparation. The greenhouse was bolted onto numerous concrete footings which were not attached to the concrete pad floor. According to Stueck, removing the greenhouse would not cause any damage to the land or the structure, nor would it require significant time or cost to restore the land to its original condition. Stueck testified that the greenhouse was constructed on site and it was designed, assembled, and installed with the intention that if business was unsuccessful, Prairie Tree could dismantle, move, and reassemble it at another location. According to Stueck, the greenhouse is not unique, but it is similar to structures found at nurseries throughout the United States.

Stueck testified that Prairie Tree's greenhouse in Lenexa is identical to the greenhouse at its Kansas City, Missouri location. That greenhouse has a concrete pad and concrete footings. In finishing the construction, a layer of concrete was poured to connect the footings and pad. Stueck indicated that the concrete can be easily broken to access the bolts. Stueck stated that, upon completion, the Lenexa greenhouse would also have concrete footings attached to the pad.

3

Stueck testified that, once finally constructed, the greenhouse would be the primary facility for retail and wholesale customers at the Lenexa location. He stated that Prairie Tree was also going to construct cubicles inside the greenhouse to use as office space and also install cash registers. Underneath the glass roof and walls of the greenhouse, a storage room and restrooms would be constructed and attached to the concrete pad. According to Stueck, the offices would not have ceilings (other than the glass roof) but the restrooms and storage room would have ceilings. The greenhouse had electrical and gas utilities connected to the structure to accommodate the offices and cash registers.

In addition to the greenhouse, Prairie Tree constructed an adjacent parking lot and driveway while performing best management practices on its surrounding property to ensure adequate greenspace. Stueck estimated that Prairie Tree had spent about $2.5 million to $3 million on all aspects of the greenhouse project.

According to Stueck, BOTA classified some hoop houses as personal property years ago. The hoop houses are bolted to a separate foundation, and they can be removed by unbolting the structure from the footings underneath it. To control the temperature in a hoop house, the plastic covering is manipulated. A shade cloth placed on top of the hoop house protects the plants from the sun. By comparison, Stueck testified that the greenhouse differs from the hoop houses because it can be used year round and it is heated and ventilated.

David Flatt, a manager and construction superintendent for Prairie Tree, testified that his responsibilities included assembling the greenhouse which was done at the Lenexa site. According to Flatt, the company which sold Prairie Tree the greenhouse sent someone from Belgium to assist the employees with the installation.

Flatt described the structure of the greenhouse. He indicated that the pieces of glass that make up the greenhouse rest on pieces of aluminum molding. A rubber strip is then installed. Flatt testified that the greenhouse is not airtight. He confirmed that the greenhouse is not attached to the concrete pad and it is fastened to the ground like the hoop houses, which he stated he frequently moves. Flatt testified that the greenhouse was not fully constructed as of January 1, 2016, and as of the date of the hearing, it still was not fully assembled or being used.

BOTA heard testimony from Robert Graverholt, an engineer with ASM Engineering Consultants. Prairie Tree retained Graverholt to certify that the greenhouse met United States building codes for snow and wind since it was not manufactured in the United States. He opined that the structure "met all their criteria for the US IBC Building Code." Graverholt also designed the 40-inch thick concrete pad inside the greenhouse. According to Graverholt, the greenhouse has 2-foot-high precast concrete panels that are bolted onto the structure, but these panels are not attached to the concrete pad.

Regarding the design of the greenhouse, Graverholt testified that he was instructed that "the building had to be able to be disassembled, and had to be able to be moved off site if warranted." According to him, removing the greenhouse would not damage the land, and it would not require significant time or cost to restore the land to its original condition. He stated that, after disassembly, the columns "[v]ery easily" could be unbolted, removed, and reinstalled somewhere else.

Graverholt testified that he disagreed with the County's determination that the greenhouse was a commercial real estate building. He stated:

> "It is a structure that is kind of unique in itself. I classify it as a non-building structure. Even though it may have a roof and walls, it's not the type of structure that is consistent as real property where it's got watertight and weather tight [*sic*]. It protects the

5

interior plants, you might say—that's the process that it's being used, from the weather elements, winds, harsh winds, heavy rains, and bad weather, cold weather too."

Graverholt testified that, in his profession, things are classified as structures or nonstructures, and the greenhouse would be classified as a nonstructure. He testified that it is not intended to be fully occupied all the time. He described the greenhouse as "basically a piece of equipment that can be operated and function as needed for the process of growing plants."

The County presented one witness, Kyle Blanz, an appraiser employed by the County. Blanz testified that the value of the concrete pad and shell of the greenhouse was $3,165,677. He indicated that the concrete footings (which he described as pylons or piers) to which the greenhouse frame is bolted are 1.25 feet by 3 feet of concrete in the ground. Although Prairie Tree differentiated between the concrete footings that the frame is bolted to and the concrete pad of the greenhouse, Blanz testified that when the greenhouse is completed, any gaps between the footings and concrete pad will be filled in with concrete in order to produce a continuous concrete floor.

Blanz testified that after he conducted his inspection and compiled the necessary information, he then considered a three-prong fixture test in arriving at his opinion that the greenhouse should be classified as real estate. First, he believed the structure was annexed to the ground because it would damage the ground to remove the concrete footings. Second, he concluded that the greenhouse was adapted to the purpose of the land because it enclosed the restrooms and eventually would house a computer room with electrical panels and a breakroom with a kitchen. Third, with regard to the property owner's statement that Prairie Tree intended to have the ability to dismantle and remove the greenhouse if necessary in the future, Blanz testified that the owner invested "an awful lot of money in this project. I cannot imagine that they've invested this much money if their intent was anytime soon to move this structure." He testified that Prairie

6

Tree's greenhouse in Kansas City, Missouri, had been at that location since 2001. He opined that because Prairie Tree was moving its retail operation into the greenhouse, its intent was to keep the structure at the Lenexa location.

Blanz also reviewed the Kansas Department of Revenue's Personal Property Guide. He advised BOTA that the guide specifically mentions commercial greenhouses and states that they are real property. Blanz stated that he and his coworkers did extensive research and contacted many other county appraisers to obtain their expert opinions. Based on these professional opinions and research, Blanz concluded that the greenhouse should be classified as real property. According to Blanz, after he explained the structure to a County planner, the planner opined that the greenhouse was similar to a prefabricated warehouse building where a frame is put up and then panels are brought in and bolted to a frame. He also testified that after viewing Prairie Tree's greenhouse in Kansas City—which was similar to the greenhouse in Lenexa—he contacted the Jackson County Assessor's Office to inquire how it categorized the greenhouse. According to Blanz, he was informed the greenhouse was classified as real property.

On March 31, 2017, BOTA issued a summary decision in Prairie Tree's equalization appeal. BOTA noted that Prairie Tree claimed the greenhouse should be classified as personal property since it is not airtight or waterproof and is only bolted to concrete footings that are separate from the concrete pad that serves as the floor of the structure. BOTA acknowledged Prairie Tree's argument that its intention was that the greenhouse could be moved to another location without damaging the land if the business was unsuccessful in Lenexa.

On the other hand, BOTA acknowledged the County's argument that it had properly classified the greenhouse as real estate. In addition to providing a place to grow and maintain plants, the County asserted the greenhouse was designed for occupancy and that Prairie Tree's intent was to permanently affix the greenhouse to the land.

7

BOTA applied the fixture test set forth in K.S.A. 2017 Supp. 79-261(b) and determined that the County had properly classified the property as real estate valued at $3,983,970 for the tax year 2016. On April 13, 2017, Prairie Tree requested a full and complete opinion. On May 4, 2017, BOTA issued a full and complete opinion, reaffirming its ruling that the County properly classified the greenhouse as real estate. On May 19, 2017, Prairie Tree filed a petition for reconsideration before BOTA. Prairie Tree argued that BOTA made conclusions that were contrary to the testimony in the case. On June 5, 2017, BOTA denied Prairie Tree's request for reconsideration and found that the nursery offered no evidence or arguments that persuaded BOTA to modify its original order or to grant reconsideration.

On June 28, 2017, Prairie Tree filed a timely petition for judicial review with our court.

ANALYSIS

A taxpayer has the right to appeal an order of BOTA by filing a petition for judicial review with the Court of Appeals or the district court under K.S.A. 2017 Supp. 74-2426(c). Prairie Tree filed a timely petition for judicial review with our court. On appeal, Prairie Tree contends BOTA erred in classifying the greenhouse as real property.

We review BOTA's decision under the Kansas Judicial Review Act, K.S.A. 77-601 et seq. K.S.A. 2017 Supp. 74-2426(c). While a county bears the burden of proof before BOTA, the burden of proving the invalidity of BOTA's actions on appeal is on Prairie Tree since it is the party asserting the invalidity of the classification. See K.S.A. 2017 Supp. 79-1609; K.S.A. 2017 Supp. 77-621(a)(1); *In re Equalization Appeal of Wagner*, 304 Kan. 587, 597, 372 P.3d 1226 (2016).

K.S.A. 2017 Supp. 77-621 sets forth our scope of review on a petition for judicial review. Under K.S.A. 2017 Supp. 77-621(c), our court may grant relief only if it determines that one of the eight listed factors has been met. Although Prairie Tree does not specify which subsection entitles it to relief, we discern that Prairie Tree is relying on K.S.A. 2017 Supp. 77-621(c)(4) and (7). These provisions provide that a reviewing court may grant relief when the agency erroneously interpreted or applied the law or when the agency based its action on a determination of fact that "is not supported by the appropriate standard of proof by evidence that is substantial when viewed in light of the record as whole . . . ."

K.S.A. 2017 Supp. 77-621(d) explains the manner by which we review an agency's factual determination:

> "For purposes of this section, 'in light of the record as a whole' means that the adequacy of the evidence in the record before the court to support a particular finding of fact shall be judged in light of all the relevant evidence in the record cited by any party that detracts from such finding as well as all of the relevant evidence in the record, compiled pursuant to K.S.A. 77-620, and amendments thereto, cited by any party that supports such finding, including any determinations of veracity by the presiding officer who personally observed the demeanor of the witness and the agency's explanation of why the relevant evidence in the record supports its material findings of fact. In reviewing the evidence in light of the record as a whole, the court shall not reweigh the evidence or engage in de novo review."

Our task in this appeal, therefore, is to determine whether Prairie Tree has met its burden to prove that BOTA incorrectly interpreted and applied the law regarding its classification of the greenhouse and whether Prairie Tree has shown that BOTA's conclusion that the property was real property is not supported by substantial evidence in light of the record as a whole.

9

Under Article 11, § 1 of the Kansas Constitution (2017 Supp.), property subject to ad valorem property tax is divided into two classes—real property and personal property. K.S.A. 79-102 provides that the term "real property" includes not only land "but all buildings, *fixtures*, improvements, mines, minerals, quarries, mineral springs and wells, rights and privileges appertaining thereto." (Emphasis added.) The term "personal property" is defined to "include every tangible thing which is the subject of ownership, not forming part or parcel of real property." K.S.A. 79-102.

Prairie Tree maintains that its greenhouse is tangible personal property. BOTA agreed with the County's conclusion that the greenhouse was a fixture upon the land and, therefore, should be classified as real property. If it is unclear whether property is a fixture, Kansas law provides that the three-factor test codified in K.S.A. 2017 Supp. 79-261(b)(2) shall be used to determine the proper classification. Prairie Tree claims that BOTA erroneously applied K.S.A. 2017 Supp. 79-261(b)(2) and that there was insufficient competent evidence to support its ruling. Whether a particular piece of property is a fixture of the real property presents a mixed question of law and fact. See *City of Wichita v. Eisenring*, 269 Kan. 767, 783, 7 P.3d 1248 (2000) (determining property value in a condemnation proceeding).

K.S.A. 2017 Supp. 79-261(b)(2) sets forth the three factors that shall be considered:

"(A) The annexation of the machinery and equipment to the real estate;

"(B) the adaptation to the use of the realty to which it is attached and determination whether the property at issue serves the real estate; and

"(C) the intention of the party making the annexation, based on the nature of the item affixed; the relation and situation of the party making the annexation; the structure and mode of annexation; and the purpose or use for which the annexation was made."

In summary fashion, our court has described the three factor test "'for determining whether personal property becomes a fixture is: "(1) annexation to the realty; (2) adaptation to the use of that part of the realty with which it is attached; and (3) the intention of the party making the annexation." [Citations omitted.]'" *In re Equalization Appeal of Kansas Star Casino*, 52 Kan. App. 2d 50, 68, 362 P.3d 1109 (2015) (quoting *In re Equalization Appeals of Total Petroleum, Inc.*, 28 Kan. App. 2d 295, 299-300, 16 P.3d 981 [2000]); K.S.A. 2017 Supp. 79-261(b)(2).

Application of these three factors involves a careful analysis of "'all the individual facts and circumstances attending the particular case.' [Citations omitted.]" *Total Petroleum*, 28 Kan. App. 2d at 300. Similar to the approach taken by BOTA and the parties, we will consider each of the three factors separately.

*Annexation*

With regard to this first factor, BOTA found:

> "The Board finds this component of the fixtures test to be satisfied. The Board agrees with the County that removal of the concrete columns which serve to affix the greenhouse would cause damage to the land. The Board further notes that the Taxpayer testified he spent over a million dollars to purchase the greenhouse and spent an estimated one to 1.5 million in labor costs and additional materials to construct the structure in a process that has taken well over a year. The Board finds it is unlikely, given the significant costs and time involved to assemble and disassemble the subject greenhouse, that it will ever be moved."

Prairie Tree does not dispute BOTA's finding that construction of the greenhouse required a considerable amount of time and expense. Instead, Prairie Tree argues that BOTA erred because it is irrelevant whether the removal of the concrete footings would damage the land. Prairie Tree concedes that the "the concrete footings are real property

11

and are annexed to the real estate." The nursery's contention is that the footings and greenhouse should have been appraised as individual assets, not a completed structure. Since the greenhouse can be unbolted from the footings without damaging them or the real estate, Prairie Tree contends the individual footings should be classified as real estate and the greenhouse should be classified as an item of personal property. In this regard, Prairie Tree points out that its witnesses testified that removal of the greenhouse from the footings would not damage the real estate.

Preliminarily, Prairie Tree cites no authority for its general proposition that component parts that comprise a completed building structure should be assessed individually as personal property. Moreover, Prairie Tree has not cited any authority for its specific contention that numerous concrete footings anchoring a greenhouse and the greenhouse itself should be considered separately as individual assets. We know of no such precedent.

Our court has held that under certain circumstances, specific individual assets attached to a structure should be considered separately to determine whether each item is personal or real property. In *In re Equalization Appeal of Coffeyville Resources Nitrogen Fertilizers*, No. 117,045, 2018 WL 4655648 (Kan. App. 2018) (unpublished opinion), our court upheld BOTA's finding that 682 personal property assets at the CRNF plant, which were attached to the structure, were personal property. Our court explained the reasons why these individual assets were personal property even though they were attached to the real estate:

> "Here, BOTA found that most of CRNF's assets were personal property for several reasons. It held that the evidence showed that the property was not attached to the land in a permanent manner, but rather bolted into place and readily movable. The assets were designed to be readily movable, and CRNF routinely moved the assets as part of its normal business practice and without damaging the foundations, underlying land, or other equipment. Furthermore, BOTA found that there was an active industry of people

12

specializing in the acquisition, sale, and relocation of used industrial assets like those at issue in the case. The evidence supports BOTA's findings. The assets are supported by concrete foundations, but the assets themselves are merely bolted on. They are routinely moved for maintenance or repair. The larger assets have lifting lugs to assist in moving them. Smaller assets were specifically designed so that they could be easily removed and replaced. The assets can be moved without damaging the foundations or surrounding equipment." 2018 WL 4655648, at *10.

As is readily apparent, Prairie Tree's greenhouse displays none of the characteristics of an item of personal property attached to the real estate as described in *Coffeyville Resources*. The greenhouse is a large building—45,153 square feet—primarily comprised of glass pieces, aluminum moldings, and rubber strips. Unlike the personal property items in the CRNF plant which were designed to be *readily movable* and were frequently moved within the plant, there was no evidence that the greenhouse was designed to be readily movable or had ever been moved after it was constructed. Moreover, unlike the CRNF items, the greenhouse did not need to be moved in order to maintain or repair the structure, and there were no lifting lugs to facilitate moving the greenhouse. In short, *Coffeyville Resources* persuasively shows that the greenhouse does not exhibit any of the characteristics of an item of personal property.

Moreover, BOTA's conclusion that the property is annexed to the real estate is supported by substantial competent evidence. In *Total Petroleum, Inc.*, 28 Kan. App. 2d at 301, a panel of this court agreed that some components of an oil refinery were annexed to the property because "removal of any portion would be exceedingly laborious and complicated." Although Prairie Tree's witnesses testified that the greenhouse would be easy to move, they also testified that construction costs were more than a million dollars and the construction of the greenhouse structure took more than a year. Evidence of the cost and time of construction of the greenhouse clearly and convincingly shows that dismantling and removal of the greenhouse and erecting it at another location would be "exceedingly laborious and complicated." See 28 Kan. App. 2d at 301. Additionally, even

13

if the concrete pad is considered separately from the greenhouse, the concrete footings to which it is bolted extend three feet into the ground, obviously annexing it to the real estate. We conclude it was not erroneous for BOTA to find the annexation factor applied and there was substantial evidence in support of annexation.

*Adaptation*

Next, Prairie Tree argues that the adaptation factor weighs in favor of the greenhouse being classified as personal property. Prairie Tree cites to the Personal Property Valuation Guide (see K.S.A. 2017 Supp. 79-505[a]) which it says focuses on whether the property at issue serves the real estate or a production process. Prairie Tree asserts: "Here, the greenhouse primarily serves a production process: to grow plant materials." In response, the County cites to *Stalcup v. Detrich*, 27 Kan. App. 2d 880, 886, 10 P.3d 3 (2000), for the general rule that "a building is normally considered to be part of a real estate." The County also points to the indicia of a retail operation which is part of the greenhouse's adaptation to the real estate.

In applying the adaptation factor to the evidence in this case, BOTA stated:

> "The Board finds that the subject greenhouse has been adapted to the use of the realty. It houses offices with computers, cash registers, a kitchen/breakroom, restrooms, storage, and electrical panels—all of which need to be protected from the elements. The Board also notes the subject has been designed for human occupancy by the employees of the nursery. By housing these features which allow the Taxpayer's business to operate and by accommodating occupancy by the Taxpayer's employees, in addition to providing a growing space for plants, the subject greenhouse is integral and an essential part of the subject land's use as a nursery, and it makes the land more valuable."

Is the greenhouse meant to benefit the real estate? As our Supreme Court observed many years ago, "one of the tests of whether a chattel retains its character or becomes a

14

fixture is the uses to which it is put. If it be placed on the land for the purpose of improving it and to make it more valuable, that is evidence that it is a fixture." *A.T. & S.F. Rld. Co. v. Morgan,* 42 Kan. 23, 29, 21 P. 809 (1889).

On appeal, Prairie Tree highlights the testimony from Graverholt, who indicated that "the greenhouse structure is not consistent with commercial real property:  it is not watertight, it is not designed to be fully occupied, it is not insulated, and the heating and cooling is temporary in nature."

Graverholt's testimony that the greenhouse was not constructed with the purpose to conduct commercial business from within the structure or to be classified as commercial real estate is contradicted by the evidence that Prairie Tree was planning on operating its retail nursery business from the greenhouse and had done so in a similar Prairie Tree greenhouse for more than 10 years. This greenhouse is unique since it was constructed to grow plants *and* accommodate all of the essential components of a retail business—cash registers, a kitchen/breakroom, restrooms, storage, electrical panels, and offices with computers—all of which required protection from the elements. Moreover, as BOTA noted, the nursery employees designed the greenhouse for human occupancy. The adjoining driveway and parking lot also evidenced that the greenhouse was not just personal property but a commercial business which substantially improved the real estate and made it more valuable. See 42 Kan. at 29. We are convinced that given the substantial evidence presented, it was not erroneous for BOTA to find the adaptation factor weighed in favor of the greenhouse being classified as real property.

*Intention*

Finally, Prairie Tree argues that the third factor—the intention of the party making the annexation—weighs in favor of classifying the greenhouse as personal property. In support, Prairie Tree states that Stueck testified that he sought and purchased the

15

greenhouse because it could be disassembled and moved to a new location if needed. Additionally, Graverholt testified that he was instructed to design the foundation so that the building could be disassembled and moved to a different location if necessary.

In response, the County argues:

"An investment of $5.5 million dollars for site improvements and adaptation of the structure to be used for more than just a greenhouse but as a building intended for the occupancy of humans and the protection of sensitive equipment and technology cannot be ignored. These facts must be weighed along with the credibility of the witness testifying as to intent."

BOTA determined that Prairie Tree's intent in locating the greenhouse on this particular property was for it to become part of the real estate. BOTA concluded:

"Finally, the Board finds that the intent of placing the subject greenhouse on the subject property is that it became part of the real estate. It appears the Taxpayer intended the subject greenhouse to remain on the property, if not permanently, until it become economically obsolete. In examining the nature of the article, the Board finds that the subject is not a typical greenhouse. Inside the greenhouse structure are interior finishes and partitioning to accommodate offices with computers, cash registers, a kitchen/breakroom, restrooms, storage, electrical panels, and gas service. The purpose of the greenhouse is not only to grow plants, but to house the business operations of the nursery and its real estate improvements. As such it appears by examining the objective data, the subject greenhouse was intended from the time of annexation, to be a permanent part of the real estate."

Prairie Tree argues that BOTA's finding that the owner intended for the greenhouse to remain on the property "if not permanently, until it become[s] economically obsolete" is not supported by substantial evidence in light of the record as a whole. But similar to the analysis of the other two factors, BOTA considered not just the

16

opinion testimony of Prairie Tree's witnesses, but all of the facts and circumstances regarding the use of this property.

The undisputed testimony was that Prairie Tree purchased the greenhouse for $1,148,300. Installation costs were estimated at about $2 million to $2.5 million. Prairie Tree also invested $3 million for site improvements. This multi-million dollar investment in the real estate belies the claims of the Prairie Tree witnesses that the greenhouse was not intended to be permanent. Moreover, the evidence showed that a similar Prairie Tree greenhouse constructed in Kansas City, Missouri, had not been moved from that location for 16 years.

BOTA's finding that the greenhouse was intended to become part of the real estate is supported by substantial evidence in light of the record as whole—namely the time and expense invested in constructing the greenhouse and developing the site, in addition to the retail facilities and interior improvements built into the greenhouse structure. It was not erroneous for BOTA to determine that Prairie Tree intended for the greenhouse to become a permanent part of the real estate.

CONCLUSION

On appeal, the burden of proving the invalidity of BOTA's classification is on Prairie Tree. See K.S.A. 2017 Supp. 79-1609; K.S.A. 2017 Supp. 77-621(a)(1); *In re Equalization Appeal of Wagner*, 304 Kan. at 597. In accordance with our standard of review as set forth in K.S.A. 2017 Supp. 77-621(c)(4) and (7), we have reviewed Prairie Tree's claims that BOTA erroneously interpreted or applied the law and based its classification on a determination of fact that was not supported by the appropriate standard of proof by evidence that was substantial in light of the record as a whole. We find that Prairie Tree has failed to show error. Accordingly, we hold that BOTA did not

17

err in interpreting or applying the law and that BOTA's conclusion that the greenhouse should be classified as real property was supported by competent evidence.

Affirmed.