(10 P.3d 3)

No. 83,641

RALPH L. STALCUP, *Plaintiff/Appellee*, v. NORMAN L. DETRICH, *Defendant/Appellant*, and ROBERT DETRICH; MABEL HAMMOND; SHIRLEY MILLER; STATE OF KANSAS, acting by and through the SECRETARY OF TRANSPORTATION OF THE STATE OF KANSAS; and KANSAS POWER AND LIGHT COMPANY, *Defendants*, and STATE OF KANSAS, acting by and through the SECRETARY OF TRANSPORTATION OF THE STATE OF KANSAS, *Third-Party Plaintiff*, v. ARK-BEND ABSTRACT & TITLE COMPANY, *Third-Party Defendant*.

Opinion filed August 4, 2000.

*Kenneth L. Kerns*, of Great Bend, for appellant Norman L. Detrich.

*Timothy R. Keenan* and *Larry E. Keenan*, of Keenan & Boeckman Law Firm, P.A., of Great Bend, for appellee Ralph L. Stalcup.

Before GREEN, P.J., LEWIS, J., and ROBERT J. FLEMING, District Judge, assigned.

LEWIS, J.: Norman L. Detrich appeals from the decision of the trial court in a partition action. The action was instituted by Ralph L. Stalcup, who is the appellee. Although a number of parties were named as defendants, and there were third-party plaintiffs and third-party defendants, Norman is the only defendant involved in this appeal.

The partition action involved the following described real estate located in Stafford County, to wit:

The Northwest Quarter (NW/4) of Section Thirty-four (34), Township Twenty-One (21) South, Range, Thirteen (13) West, Stafford County, Kansas.

Title to the real estate involved in this action devolved from Amy McCoy, who was deeded the real estate by her parents. Amy is deceased and was the mother of both Ralph and Norman.

In 1950, R.C. and Mattie E. Gates deeded the West Half of the Northwest Quarter (W/2 NW/4) of 34-21-13 in Stafford County to their daughter, Amy. That deed contained the following language:

"To have and to hold all and singular, the above granted premises together with the appurtenances and every part thereof, *unto the said Amy McCoy, for and during her natural life, and upon her death, then said premises to go to the heirs of the said Amy McCoy.* It is hereby expressly understood that said Amy McCoy is to have the use and income from said premises including all the income from any and all oil and gas produced from said land and said Amy McCoy is to receive any and all rentals for the execution of oil and gas leases on said land including any and all delay rentals and in the event oil or gas or either is produced from said land is to receive all the oil and royalty payments belong to said land. It is hereby expressly understood that said Amy McCoy shall not place any lien upon her life estate in said real estate or sell the same, and the said mortgage, lien or sale is hereby prohibited.

"It is also expressly understood that said Amy McCoy shall have the right to execute and deliver oil and gas leases on said land even though the primary term of said lease may not expire until after the expiration of the life estate of said Amy McCoy and said remaindermen need not participate in the execution of said leases." (Emphasis added.)

On the same date, the same grantors deeded the East Half of the Northwest Quarter of 34-21-13 to Amy. That deed contained the following language:

"To have and to hold all and singular, the above granted premises together with the appurtenances and every part thereof, *unto the said Amy McCoy, for and during her natural life, and upon her death, then said premises to go to the heirs of the said Amy McCoy*. It is understood that the said Amy McCoy is to have the use and income from said premises during her lifetime and is to pay the taxes thereon.

"It is also expressly understood that said Amy McCoy shall not place any lien upon her life estate in said real estate to sell the same, and any such mortgage, lien or sale is hereby prohibited.

"It is expressly understood that said R.C. Gates and Mattie E. Gates, grantors herein, retain all the oil and gas royalty in and under said premises and the grantees herein are to receive no interest in said oil and gas interests." (Emphasis added.)

On the date the deeds to Amy were executed and delivered, she was unmarried and had eight living children. On the date the deeds were executed, Amy's heirs would have been her eight living children: Ralph Stalcup, a son; Marion Stalcup, a son; Forrest Stalcup, a son; Marjorie Scheib, a daughter; Lawrence Stalcup, a son; Wayne Stalcup, a son, Norman Detrich, a son; and Joseph Detrich, a son.

On August 10, 1996, Amy died. Prior to her death, her son Wayne died and was survived by his son, Allen Stalcup. Joseph also died prior to Amy and had no surviving spouse or issue. Marion conveyed his interest, if any, in the real estate to Ralph in 1976 and then died prior to Amy without spouse or issue. Lawrence died prior to Amy's death, leaving several children. At the time of her death, Amy's heirs at law would have been Ralph, Norman, Marjorie, Forrest, Allen, and Lawrence's children.

Amy owned this real estate as a life tenant as a result of the 1950 conveyances until her death in 1996. From about 1953 on, Ralph or his son, Kevin Stalcup, were tenants on the real estate and have also occupied the residence and barn on the property. Ralph instituted the current partition action.

The lawsuit is complicated somewhat by the fact that there is a metal building located on the real estate. Ralph placed this 40-foot by 80-foot structure on the real estate in 1981 at a cost of approximately $41,000, which he paid himself. The evidence indicates that Ralph and Amy had an oral agreement that the building would

be treated as personal property and that it belonged to Ralph. The building itself is bolted onto a concrete floor. There are steel girders connected to each bolt, and the sheeting is attached to the steel girders. A room was constructed in the northwest corner of the building. This metal structure was taxed separately from the real estate, and Ralph paid the taxes. The building was also insured separately from the real estate, and Kevin paid for the insurance. Ralph claims the building was personal property, and it would not go with the real estate sold at the partition sale, and Norman claims the building was part of the real estate and passes with title to the real estate.

Amy died testate, and her will requested that her heirs sell their interest in the real estate involved to Ralph for a specified sum. Everyone did so, with the exception of Norman and Allen, who were basically disinherited by reason of their refusal to comply with the terms of the will.

After a trial on the matter, the trial court concluded that the 1950 deeds created a present vested interest in the children of Amy who were living at the time the deeds were delivered to her, along with any issue who survived her children. The trial court also concluded the metal building was personal property and that it belonged to Ralph, who could remove it, and that it did not pass with the real estate sold at the partition sale.

Norman appeals from those decisions. We affirm in part, reverse in part, and remand.

## TITLE TO THE REAL ESTATE

The trial court concluded that at the time the deeds to Amy were executed and delivered, they created a life estate in Amy and a vested remainder interest in her children who were living at the time the deeds were executed. Norman argues the trial court erred and that the deeds created only a contingent interest in Amy's children. We agree with Norman's construction of the deeds, and we reverse the decision of the trial court to the contrary.

The issue which must be determined is when the remainder interest in the real estate became vested. In that regard, the law of this state has always favored the early vesting of gifts by deed or

will, and unless a contrary intention appears in the instrument, an instrument will be regarded as conveying a vested interest rather than a contingent interest. *In re Estate of Paulson*, 188 Kan. 467, 469, 363 P. 2d 422 (1961). It is also clear that a remainder interest to a class of persons is not necessarily a contingent interest. *Baldwin v. Hambleton*, 196 Kan. 353, 358, 411 P.2d 626 (1966). Indeed, remainder interests to children have been considered vested even as to afterborn children when the class is opened to let in the afterborn children. We note that a remainder interest in real estate may be vested subject to partial or complete divestment or defeasance. 196 Kan. at 358.

Whether the interest is vested or contingent depends on the proper interpretation of the instrument which created it. The interpretation of a written instrument is a question of law, and on appeal, we may construe it and determine its legal effect regardless of the construction made by the trial court. *First Financial Ins. Co. v. Bugg*, 265 Kan. 690, 694, 962 P.2d 515 (1998).

If the intention of the grantor is clear from a reading of the instrument, then there would be no occasion to employ the rules of judicial construction. *In re Estate of Works*, 168 Kan. 539, 541, 213 P. 2d 998 (1950). We need to examine the entire instrument to understand the intent of the grantor. *Baldwin*, 196 Kan. at 357. We will not consider extrinsic evidence where there is no ambiguity. Neither will we consider extrinsic evidence which seeks to give an instrument a different meaning than that which the law would attribute to the language in question. See 196 Kan. at 356.

In the instant matter, the deeds conveyed to Amy a life estate and "upon her death, then said premises . . . go to the *heirs of the said Amy McCoy*." In both instruments, the remaindermen are described as the "heirs" of Amy. It is settled law in Kansas that a living person can have no heirs. *Campbell v. McBurney*, 201 Kan. 26, 30, 439 P.2d 133 (1968).

In *Brown v. Anderson County*, 100 Kan. 319, 321, 164 Pac. 288 (1917), the grantors executed a deed to the grantee and " 'his heirs and assigns forever.' " The grantee had two daughters who would be his heirs at the time of his death. The Supreme Court held that until the death of the grantee, "the children are contingent re-

maindermen and heirs apparent in whom no estate has as yet vested." 100 Kan. at 322.

In *Miller v. Miller*, 91 Kan. 1, 136 Pac. 953 (1913), property was deeded to a son for life, then to his wife for life or so long as she should remain his widow, with the remainder in fee to the heirs of his son, and in default of heirs, to the grantor. The Supreme Court held that under this deed, the heirs of the body of the grantee. could not be ascertained until his death and that the children who were living at the time the deed was executed and delivered would take nothing from the conveyance unless they outlived their father. 91 Kan. at 6-7.

In the present case, the deeds to Amy make use of the word "then." These deeds grant Amy a life estate and *then* to her heirs. As we read it, the word "then" indicates that the deed would not vest in the remaindermen until her death. In 28 Am. Jur. 2d, Estates § 349, we find the following: "In the case of the limitation of a remainder after a life estate to 'my heirs at law then surviving,' or 'to my then heirs,' the remainder vests on the termination of the life estate and is contingent."

In this case, Amy's heirs could not be determined until her death. Accordingly, under the language in the deed, title could not vest in the remaindermen until Amy's death.

Ralph argues the case should be controlled by *In re Estate of Works*, 168 Kan. 539. We do not agree. In *Works*, the remainder interest was to vest in the "children" of the life tenant. When a specific class is named, such as in the case of children, title is vested subject to partial or complete divestment or defeasance. See *Baldwin*, 196 Kan. at 358. The language used in the deeds in this case is the word "heirs," which is not a specific class. This distinguishes the current case from those cited by Ralph in support of the trial court's decision.

A deed conveying real estate to the grantee for and during his or her natural life and upon his or her death said premises to go to the heirs of the grantee creates a life estate in the grantee and, at best, a contingent remainder only in his or her heirs. The remainder interest in the real estate will not vest in the heirs of the grantee until the death of the grantee.

We hold that the remainder interest in the real estate in question did not vest in Amy's heirs until the time of her death. Our conclusion is based on the inescapable fact that no living human being can have heirs. Accordingly, we hold the trial court erred in determining that the remainder interests vested at the time of the conveyance, and we reverse the trial court's decision to that effect. We hold the remainder interest in this real estate did not vest until Amy's death, and we remand the matter for determination of those individuals in whom title did vest at the time of Amy's death.

## THE METAL BUILDING

The trial court determined that the metal building located on the real estate and described above was personal property which Ralph owned and which he could remove from the real estate. We agree with that determination and affirm the decision of the trial court to that effect.

Our standard of review when the trial court has made findings of fact and conclusions of law is to sustain those findings if they are supported by substantial competent evidence. *Tucker v. Hugoton Energy Corp.*, 253 Kan. 373, 377, 855 P.2d 929 (1993). In the case of the metal building, we conclude that the trial court's findings of fact and conclusions of law are, in fact, supported by substantial competent evidence.

We acknowledge that the general rule is that a building is normally considered to be part of a real estate and that the burden of showing that it is otherwise is upon the party who claims that the building is personal property. See 35 Am. Jur. 2d, Fixtures § 78. The factors to be considered in determining whether a building is personal property or a fixture on the real estate are: (1) annexation to the realty; (2) adaptation to the use of that part of the realty with which it is attached; and (3) the intention of the party making the annexation. *U.S.D. No. 464 v. Porter*, 234 Kan. 690, 695, 676 P.2d 84 (1984).

In regard to the first factor, we note that the building is on a concrete slab and is attached by metal bolts. The evidence indicates that although it would take some effort, the building could be removed by detaching the bolts and removing the metal sheeting.

There would be no damage to the real estate by the removal of the building.

In addition, the building does not appear to be particularly adapted to the use of the farm on which it sits. The trial court held that the type of building involved in this case is frequently found on farms all across the state and that they are not particular to the real estate upon which they sit. We agree with that construction.

Finally, there is no question that Ralph and his mother intended that the building would remain personal property. Ralph had an oral agreement with his mother that the building was to remain personal property, but there was no writing. Ralph paid the entire cost of the building construction, the building was taxed separately from the real estate, and Ralph paid the taxes. The building was insured separately from the real estate, and Ralph or his son paid for the insurance. There seems to be no question that the parties intended for the metal building to remain personal property.

We affirm the trial court's decision that the metal building was personal property, and it did not pass with the real estate which was sold at the partition sale.

We affirm the trial court's decision on the metal building, we reverse the trial court's decision on the ownership of the remainder interests in the real estate, and we remand the matter for a determination of who owned the remainder interest in the real estate at the time of Amy's death.

Affirmed in part, reversed in part, and remanded.