NOT DESIGNATED FOR PUBLICATION

No. 123,420

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

BANK OF COMMERCE & TRUST COMPANY,
*Appellant*,

v.

BANCCENTRAL NATIONAL ASSOCIATION,
*Appellee*.

MEMORANDUM OPINION

Appeal from Harper District Court; R. SCOTT MCQUIN, judge. Opinion filed August 19, 2022. Affirmed in part, reversed in part, and remanded with directions.

*James J. Long*, of Wellington, for appellant.

*Martin R. Ufford*, of Hinkle Law Firm LLC, of Wichita, for appellee.

Before SCHROEDER, P.J., BRUNS and WARNER, JJ.

WARNER, J.: Bank of Commerce & Trust Company and its former tenant BancCentral National Association dispute ownership of an ATM and an antique cannonball safe that BancCentral removed from the building at the end of its tenancy. The district court found that neither item was affixed to the building, so they belonged to BancCentral. We agree that the ATM is not a fixture and affirm that portion of the district court's ruling. But because the district court's ruling on the safe is not supported by

1

substantial competent evidence, we reverse the judgment on that issue and remand the case for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

The First National Bank Building in Harper has housed various banks continuously since its construction in 1917. In 1999, the First National Bank of Anthony acquired the First National Bank Building and began operating a branch there. In 2009, the bank failed, and the federal government closed it, appointing the Federal Deposit Insurance Corporation (FDIC) as receiver. Unable to find a buyer for a whole-bank transaction—that is, someone to buy the banking business together with the First National Bank Building that housed it—the FDIC severed ownership and sold these two assets separately.

First, in 2009, the FDIC sold the banking business to Bank SNB (then known as Bank of Kansas), which agreed to temporarily lease the building. Then, in 2011, the FDIC sold the First National Bank Building to the Sally Olivier Trust. The deed conveyed the building and "any and all improvements located thereon and affixed thereto." The sale contract also indicated that a quitclaim bill of sale would list any personal property in the building conveyed during the sale. The record does not reveal that any bill of sale was executed.

Bank SNB continued to lease the building from the Trust until 2014, when appellee BancCentral bought Bank SNB's Harper branch. Included in this sale was title to all of Bank SNB's automated teller machines (ATMs) in the branch. BancCentral continued the leasing arrangement with the Trust and operated a branch there. The lease expired at the start of 2018, but BancCentral continued to pay rent as a month-to-month tenant.

2

In mid-2018, through a series of transfers and acquisitions, appellant Bank of Commerce became the owner of the First National Bank Building. This transaction resulted in Bank of Commerce also becoming BancCentral's landlord, with BancCentral as its holdover month-to-month tenant. Bank of Commerce notified BancCentral that operating month-to-month was not feasible and offered a new lease. The parties never executed a lease, though BancCentral paid—and Bank of Commerce accepted—rent for the next three months.

BancCentral then vacated the First National Bank Building. When BancCentral left the premises, it took various items from the building, including an antique cannonball safe from a vault, the vault's antique door and doorframe, a drive-through ATM, and safe-deposit boxes.

BancCentral's predecessor, Bank SNB, installed the ATM in 2012, without the Trust's knowledge or permission. The new ATM replaced an existing drive-through ATM that First National Bank of Anthony had installed while it occupied the building. Bank SNB installed a newer Diebold model, manufactured after the Trust bought the First National Bank Building. The ATM extended through a hole in the wall that predated First National Bank of Anthony's tenure, though First National Bank of Anthony had enlarged the hole to accommodate its ATM.

The Diebold ATM is about 58 inches tall, 26.5 inches wide, and 37 inches deep. It weighs 1,457 pounds, and its instructions show that it should be anchored to the floor through mounting holes. Despite these instructions, BancCentral did not have it bolted to the floor and instead it was secured with a plastic lip and caulking around the edges where it protruded through the wall. When BancCentral vacated the building and removed the Diebold ATM, it placed plywood over the remaining hole in the wall. Bank of Commerce has since patched the hole where the ATM was previously located.

The exact origins of the antique cannonball safe—and how it first got into the First National Bank Building—are unclear, but the parties agree that it had been in the First National Bank Building vault for decades before BancCentral removed it. Cannonball safes were popular in the early 20th century, but banks now consider them outdated. BancCentral has never used the cannonball safe to store cash or valuables.

The cannonball safe sits on wheels, but the safe was too large to fit through the vault door. To remove the safe from the vault, BancCentral had to remove the antique vault door and frame. Like the safe, the vault door and frame dated to the early 20th century, and the frame was partially embedded in the building's masonry, which was damaged in the removal process. After removing the vault door and frame, contractors rolled the safe out of the bank and, because of its weight, used a power lift to place it on a trailer. BancCentral then stored and repainted the safe, and it now sits on display in BancCentral's Harper branch.

After learning that BancCentral had removed the ATM, the cannonball safe, and the various other items, Bank of Commerce sued BancCentral for conversion, replevin, and breach of contract, seeking their return. The district court granted summary judgment for Bank of Commerce on the vault door and frame, finding that they were fixtures, or part of the First National Bank Building, and thus belonged to the building's owner. The court granted summary judgment for BancCentral on the ATM and safe-deposit boxes, finding they were not fixtures. Because factual issues remained regarding the classification and ownership of the cannonball safe, these matters proceeded to a bench trial to determine whether the safe was a fixture and whether its removal materially damaged the First National Bank Building. The district court ruled in BancCentral's favor, finding the safe was not a fixture because it was on wheels and was easily removed from the vault after BancCentral removed the door and frame. But the court ordered BancCentral to pay over $8,000 for the repairs caused by the removal of the vault door and frame.

4

Bank of Commerce now appeals the district court's rulings related to the ATM and cannonball safe.

## DISCUSSION

Personal property that has been permanently affixed to real property "become[s] part of the realty." *City of Wichita v. Denton*, 296 Kan. 244, 258, 294 P.3d 207 (2013). To determine whether something has become affixed—or is a "fixture"—courts consider (1) whether the property has been annexed to the real property; (2) whether the property has been adapted to the realty; and (3) the intent of the parties who put it there. *Stalcup v. Detrich*, 27 Kan. App. 2d 880, 886, 10 P.3d 3 (2000). The analysis of each of these questions turns on the particular facts and circumstances surrounding the installation and use of the property at issue. *In re Equalization Appeals of Total Petroleum, Inc.*, 28 Kan. App. 2d 295, 300, 16 P.3d 981 (2000).

The classification of an item as personal or real property intertwines factual and legal questions. See *City of Wichita v. Eisenring*, 269 Kan. 767, 783, 7 P.3d 1248 (2000). The district court concluded that neither the ATM nor the cannonball safe were fixtures, and thus both items were personal property BancCentral acquired when it purchased the banking business from Bank SNB in 2014. Yet its rulings arose from different procedural postures. The court granted summary judgment to BancCentral on the ownership of the ATM, finding as a matter of law under the uncontroverted facts that the ATM was personal property. The court's ruling regarding the safe arose after a bench trial.

Summary judgment is appropriate when "there is no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law." K.S.A. 2021 Supp. 60-256(c)(2). A party seeking summary judgment must show there are no disputed questions of material fact—that there is nothing the fact-finder could decide that would

change the outcome. *Shamberg, Johnson & Bergman, Chtd. v. Oliver*, 289 Kan. 891, 900, 220 P.3d 333 (2009). This requires the district court to view the evidence in the light most favorable to the nonmoving party, giving that party the benefit of every reasonable inference drawn from the evidentiary record. 289 Kan. at 900. Because summary judgment tests the legal viability of a claim, we apply this same framework on appeal. *Martin v. Naik*, 297 Kan. 241, 246, 300 P.3d 625 (2013).

In contrast, when reviewing a district court's property-classification ruling after a trial, appellate courts defer to the district court's factual findings as long as they are supported by substantial competent evidence, i.e., "such legal and relevant evidence as a reasonable person might accept as sufficient to support a conclusion." *Gannon v. State*, 305 Kan. 850, Syl. ¶ 11, 390 P.3d 461 (2017). We give no such deference to the district court's legal conclusions, over which our review is unlimited. 305 Kan. at 886-87.

Despite these different procedural postures, both of the district court's rulings centered primarily on its conclusion that the first element of the fixture analysis—annexation—had not been established. Put another way, the court found that neither the ATM nor the safe had been sufficiently annexed to the First National Bank Building to become part of the realty.

Under annexation, courts look to "the degree of permanency with which the property is attached to the realty." *City of Wichita*, 296 Kan. at 258. This requires examining the details surrounding an item's attachment to the real property and removability. See *Total Petroleum*, 28 Kan. App. 2d at 300. A readily replaceable item, or one that can be removed with little damage to the real estate, is less likely to be annexed. See *Dodge City Cooperative Exchange v. Board of Gray County Comm'rs*, 62 Kan. App. 2d ___, ___ P.3d ___, 2022 WL 2898814, at *8-9 (No. 122,499, filed July 22, 2022).

For example, this court found in *Stalcup* that a 40-by-80-foot metal building was not sufficiently annexed to the real property. 27 Kan. App. 2d at 886-87. The building was attached to a concrete slab by metal bolts, and it could be removed by detaching the bolts. In affirming the district court's conclusion that the building was personal property—and thus not a fixture that would be subject to a partition of the real estate—our court found that though removal would "take some effort," it would cause "no damage to the real estate." 27 Kan. App. 2d at 886-87.

Shortly after this court issued our decision in *Stalcup*, we found that other property had been sufficiently annexed (and ultimately affixed) to the realty of an oil refinery. In *Total Petroleum*, we considered the classification for tax purposes of refinery tanks. Because of the tanks' sizes and weights, they had to be transported via semitruck to the refinery location and constructed on-site, where the parts of the tank were welded together and built 20 feet into the ground with concrete foundations and designed to withstand 100-mile-per-hour winds. Removing the tanks would have required cutting them apart piece by piece. We found that "substantial competent evidence [supported the district court's conclusion] that the property was annexed to the realty." 28 Kan. App. 2d at 300.

Very recently, we concluded in *Dodge City Cooperative Exchange* that various pieces of equipment bolted to grain storage bins were not fixtures because they had not been sufficiently annexed to the real property. 2022 WL 2898814, at *8-9. We emphasized there that the equipment could be removed without damaging the bins, and removal would not be "unduly complicated or costly." 2022 WL 2898814, at *8. We also noted that similar equipment had been removed and installed on other bins, demonstrating their movability. Because the various pieces of equipment were "not attached—or affixed—to the real estate with the requisite degree of permanency," they were not fixtures. 2022 WL 2898814, at *8.

As these cases illustrate, the annexation analysis assesses the permanency of an item's attachment to the real estate. This assessment considers the manner and degree to which an item is physically attached to the realty, as well as the ease of the item's removal and the effect of the removal on the realty. With these principles as background, we turn to the district court's analysis of the ATM and the cannonball safe.

1. *The district court properly concluded that the ATM was personal property that belonged to BancCentral.*

The district court granted summary judgment to BancCentral on the ownership of the ATM, concluding that the ATM was personal property and thus had been acquired by BancCentral when it bought the banking business. The court based this ruling on its conclusion that the ATM was not affixed to the First National Bank Building. We agree.

As an initial matter, BancCentral asserts that Bank of Commerce failed to preserve the issue of whether the ATM is a fixture. It argues Bank of Commerce failed to request the district court make more specific findings under Supreme Court Rule 165 (2022 Kan. S. Ct. R. at 234) and failed to brief the issue. Rule 165 requires a district court to separately state its findings of fact and conclusions of law when granting a summary-judgment motion. See K.S.A. 2021 Supp. 60-252. Failure to object to inadequate Rule 165 findings precludes a party from supplementing any omissions on appeal. *Dragon v. Vanguard Industries, Inc.*, 282 Kan. 349, 356, 144 P.3d 1279 (2006).

We are not persuaded by this argument and find that Bank of Commerce sufficiently preserved the ATM issue for our review. In its order granting summary judgment on the ATM, the district court adopted BancCentral's memoranda in support of its motion as the court's findings of facts and conclusions of law. Those memoranda thoroughly analyze whether the ATM is a fixture, concluding it is not. Bank of Commerce's argument does not depend on anything that is missing from those filings.

Nor does Bank of Commerce's briefing preclude our review. We thus proceed to the merits of Bank of Commerce's argument.

The uncontroverted facts indicate that Bank SNB installed the ATM in 2012 to replace an earlier ATM—as the bank before it had done in 2005—by placing the new ATM in the existing hole in the wall and sealing the edges with caulk. Though heavy, the ATM came and left as a fully constructed machine. It was not bolted or attached to the floor in any way, despite the manufacturer's instructions. And even if it had been bolted to the floor, there is no indication that removal would damage the building. Indeed, the evidence showed that BancCentral did *not* damage the building when it removed the ATM; it removed the machine through the hole that had existed since at least the 1990s. And although removing the ATM left the hole exposed, it was easily patched. In short, the undisputed evidence supports the court's conclusion that the ATM was never sufficiently annexed to the realty with any degree of permanency.

Our analysis could end there, as all three elements of the fixture analysis must be established for personal property to be converted to realty. See *Dodge City Cooperative Exchange*, 2022 WL 2898814, at *7. After all, if an item has not been *annexed* to the real estate, it cannot be *affixed* to that property. See 2022 WL 2898814, at *8-9. But for the sake of completeness, we note that there is evidence in the record to support the district court's other findings regarding the ATM.

In assessing the second element of the fixture analysis—adaptation—courts look to whether an item is "particularly adapted to the use of the [realty] on which it sits." *Stalcup*, 27 Kan. App. 2d at 887. Put differently, a fixture is more likely to be unique to the property on which it sits, rather than something that exists on similar properties around the state. 27 Kan. App. 2d at 887. Courts also evaluate the item's importance to the function and value of the realty. *Total Petroleum*, 28 Kan. App. 2d at 301.

Again, we agree with the district court's finding that the ATM was not adapted to the use of the First National Bank Building. ATMs are common in banks throughout the state. Nothing in the record shows that Diebold manufactured this ATM specifically for the First National Bank Building, and its removal did not cause the building to cease functioning as a bank. Accord *Dodge City Cooperative Exchange*, 2022 WL 2898814, at *8 (concluding various pieces of equipment were not fixtures, in part because similar equipment had been removed and replaced on other grain storage bins). There was also no evidence that its removal devalued the First National Bank Building in any significant way. The undisputed facts show that the ATM was not adapted to the use of the building.

Similarly, there is evidence in the record to support the district court's finding that the ATM was not intended to be a fixture. When examining the intent of the parties, courts look to the time when the property was installed or acquired. *Total Petroleum*, 28 Kan. App. 2d at 301. The undisputed evidence also showed that when Bank SNB sold its business—not the building—to BancCentral, it explicitly included the ATM in the sale, suggesting Bank SNB viewed it as personal property. Under all three aspects of the fixture test, the undisputed facts show that the ATM was not a fixture and thus summary judgment in BancCentral's favor was appropriate.

In its final argument on this point, Bank of Commerce asserts that even if the ATM is personal property, it belongs to the owner of the First National Bank Building because it was not abandoned property. The parties discussed whether the cannonball safe was abandoned property during the trial, but neither party raised this issue before the district court regarding the ATM.

A party generally cannot raise an issue on appeal that it did not raise below. *Trotter v. State*, 288 Kan. 112, Syl. ¶ 2, 200 P.3d 1236 (2009). This preservation requirement is particularly important when a party is attempting to present a fact-intensive question, like whether property has been abandoned, for the first time on

10

appeal. Accord *Botkin v. Kickapoo, Inc.*, 211 Kan. 107, 109-10, 505 P.2d 749 (1973) (whether property has been abandoned requires an examination of all the facts and circumstances). Appellate courts, as courts of review, are not in a position to make fact findings. Furthermore, parties opposing a summary-judgment motion, as Bank of Commerce was here, have the obligation to come forward with any possible reason why judgment should not be entered in favor of the moving party. See K.S.A. 2021 Supp. 60-256(e)(2). Bank of Commerce thus waived its argument concerning abandonment of the ATM when it did not raise it to the district court, and we decline to consider that question here.

The undisputed facts show that the ATM was not a fixture as a matter of law because it was not annexed, adapted, or intended as a fixture. BancCentral, as the tenant, purchased the ATM from the previous tenant and used it as part of its banking business. The district court did not err when it granted BancCentral's motion for summary judgment as to the ATM.

2. *Because the cannonball safe was annexed to the First National Bank Building, the case must be remanded for consideration of the other elements of the fixture analysis before ownership of the safe can be determined.*

Bank of Commerce next asserts that the district court misapplied the fixture test when it found, after a bench trial, that the cannonball safe was also personal property that belonged to BancCentral. After carefully reviewing the record and the district court's ruling, we agree with Bank of Commerce that the court's annexation analysis failed to adequately consider the effect of the removal of the safe on the building. We therefore reverse the district court's judgment and remand for further proceedings to determine the ownership of the safe.

The evidence at trial showed that the cannonball safe was housed within a vault inside the bank building and had been there for decades. The safe was on wheels, as the

11

district court noted in its ruling. But other evidence showed that the safe had been essentially built into the vault: The only way BancCentral was able to extricate the safe from the building was to remove the vault door and doorframe—actions the district court found damaged the building. Once the vault entrance was enlarged through this damage, BancCentral was able to roll the safe out of the bank building, load it into a truck via a power lift (since the safe's heft is substantial), and remove it from the premises.

The district court found the cannonball safe was not annexed to the First National Bank Building because the safe "sits on wheels" and "was rolled out of the vault easily after the vault door was removed." This analysis is based on two erroneous premises.

*First*, Kansas cases have long recognized that actual physical connection is not the touchstone for annexation. Rather, as the Kansas Supreme Court observed more than a century ago, property may be "actually or constructively annexed to the realty." *Winslow v. Bromich*, 54 Kan. 300, 306, 38 P. 275 (1894); see *Cent. Branch Rld. Co. v. Fritz*, 20 Kan. 430, 434 (1878) ("[T]his connection may be slight, as well as strong, remote, as well as near, and constructive, as well as actual or absolute."). Thus, the fact that the cannonball safe was on wheels is but one factor the court should consider in determining whether that object was part of the bank building. The district court erred when it relied solely on that consideration to the exclusion of all other facts.

*Second*, in noting that the cannonball safe was easily rolled out of the bank after the antique vault door and doorframe had been removed, the court neglected to take into consideration that removing the safe was only possible after the building itself had been damaged. Under Kansas caselaw, courts must consider not only "how permanently [an] item is attached to the real property," but also the difficulty and effect of the item's removal—both on the item itself and on the realty. *Dodge City Cooperative Exchange*, 2022 WL 2898814, at *7.

12

Our review of the evidence demonstrates that the safe was constructively confined to the First National Bank Building's vault. BancCentral could not remove the safe without first removing the antique vault door and frame and damaging the building. The district court determined that the vault door and frame were fixtures—that is, part of the building—a finding BancCentral has not challenged on appeal. This means that BancCentral had to remove part of the building, damaging the masonry in the process, to remove the safe from the property.

BancCentral argues that removal must cause "material injury" to the building to show annexation, citing *Smith v. Holland Furnace Co.*, 128 Kan. 580, 583, 278 P. 719 (1929). But more recent cases suggest that any injury to the realty is a relevant consideration under annexation. See *Stalcup*, 27 Kan. App. 2d at 887; *Smith v. Anguiano*, No. 122,135, 2021 WL 2171155, at *5-6 (Kan. App. 2021) (unpublished opinion). Contrary to BancCentral's assertion, there is no structural-damage requirement under the annexation inquiry.

Taking all this evidence into consideration, we find that Bank of Commerce showed that the cannonball safe had been annexed to the First National Bank Building. The safe had been installed in the First National Bank Building's vault several decades ago—long before either Bank of Commerce or BancCentral had an interest in the property. Though the safe was on wheels, it could not be removed from the vault without damaging the property—the antique vault door and doorframe had to be removed, damaging the building. The safe had been constructively attached to the building with the requisite degree of permanency to be considered part of the building.

As we have indicated, however, the fixture analysis does not end with this conclusion. "'[A]nnexation to the realty is not the sole and controlling test of whether a certain article is a fixture or not.'" *Winslow*, 54 Kan. at 306 (quoting *A. T. & S. F. Rld. Co. v. Morgan*, 42 Kan. 23, Syl. ¶ 3, 21 P. 809 [1889]). Rather, when an object has been

annexed to real property, courts must consider whether it has been adapted to the use of the realty and whether the party who installed the object intended it to be permanently affixed to the realty. *Dodge City Cooperative Exchange*, 2022 WL 2898814, at *7.

In some cases involving fixtures, the record has been sufficient—and the facts sufficiently undisputed—for an appellate court to conduct this fixture analysis on appeal. See 2022 WL 2898814, at *8-9. In this case, however, such a review is not possible. Because the district court found the safe was not attached to the building, it did not make any factual findings regarding the safe's "use and purpose in relation to" the building. See 2022 WL 2898814, at *7. Nor did the court make any findings regarding intent.

Because substantial competent evidence does not support the district court's annexation finding for the antique cannonball safe, we reverse the judgment in favor of BancCentral on that issue. We remand the case so the district court can continue its analysis of whether the safe is a fixture—assessing the evidence and making factual findings regarding the safe's adaptation and whether it was intended to be a permanent part of the First National Bank Building.

Affirmed in part, reversed in part, and remanded with directions.